718 So.2d 476 (1998)
Debra L. Bennett VICKNAIR
v.
The NATURE CONSERVANCY.
No. 97 CA 2229.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
Rehearing Denied August 28, 1998.
*477 Michael L. Hebert, Baton Rouge, for Plaintiff-Appellant.
Lelia Anne Collier, Lafayette, for Defendant-Appellee.
Before LOTTINGER, C.J.,[*] and SHORTESS and FOGG, JJ.
*478 SHORTESS, Judge.
The sole issue on appeal is whether Debra L. Bennett Vicknair (plaintiff) is entitled to receive supplemental earnings benefits (SEB's) for the time period of August 4, 1996, to May 21, 1997. The workers' compensation judge found plaintiff did not prove that her injury caused her to earn less than 90% of her pre-injury salary and denied her claim to SEB's. Plaintiff appeals.
Plaintiff was employed by The Nature Conservancy (defendant). On May 17, 1995, she slipped and fell while walking down a driveway, injuring her left knee while in the course and scope of her employment. Plaintiff underwent medical treatment for her knee and returned to work.[1] On December 8, 1995, plaintiff voluntarily terminated employment with defendant. On December 18, 1995, she began working with International Learning and Technology Center (ILTC). She continued to have treatment for her knee while with her new employer.[2] On August 2, 1996, she resigned from her position with ILTC.
On March 15, 1996, plaintiff filed a disputed claim for workers' compensation benefits. A hearing was held on January 29, 1997, and on May 21, 1997. On June 3, 1997, the workers' compensation judge signed a judgment (1) ordering Insurance Company of North America (INA)[3] to pay a statutory maximum of $2,000.00 in penalties to plaintiff and $1,000.00 in attorney fees to plaintiff's attorney for the untimely payment of plaintiff's physical-therapy bills, and (2) dismissing plaintiff's claim for workers' compensation indemnity benefits because she failed to prove entitlement to them by a preponderance of the evidence. It is the second finding plaintiff appeals.
Plaintiff contends the workers' compensation judge erred in denying her SEB's during the requested period. Plaintiff maintains she cannot earn 90% of her pre-accident wages because her physical-therapy treatment and exercise program involve such a significant amount of time that it would be impossible to be employed. Plaintiff asserts she travels from Baton Rouge to Pelican State Physical Therapy in Covington on Mondays, Wednesdays, and Fridays, which takes seven hours a day. Plaintiff contends she exercises an extensive amount of time at home as well, which does not allow her time to be employed and prohibits her from earning 90% of her pre-accident wages. Thus, she contends, she is entitled to SEB's.
Factual findings in workers' compensation cases are subject to the manifesterror or clearly-wrong standard of appellate review.[4] In applying the manifest-error or clearly-wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.[5]
The purpose of SEB's is to compensate the injured employee for the wage-earning capacity lost as a result of an accident.[6] Like all other provisions of the workers' compensation laws, a court should liberally construe SEB provisions in favor of coverage.[7] According to Louisiana Revised Statute 23:1221(3)(a), an employee is entitled to receive SEB's if she sustains a work-related injury that results in her inability to earn 90% or more of her pre-injury wages. If the employee alleges that her work-related injury produced a partial disability rendering her unable to earn 90% of her pre-injury wages, then the employee must prove this fact by a preponderance of the evidence.[8] If successful, the employee establishes a prima *479 facie case for entitlement to SEB's and the burden of proof shifts to the employer to show the employee is physically capable of work.[9] Alternatively, if the employee alleges substantial physical pain prevents her from performing work offered or available paying at least 90% of her pre-injury wages, the employee must prove this by clear and convincing evidence, unaided by any presumption of disability, before she can recover SEB's.[10]
After a thorough review of the record, we find that plaintiff did not present any evidence proving she was partially disabled, which rendered her incapable of being employed and earning 90% of her pre-injury wages. In fact, plaintiff's treating physician, Dr. Gray Barrow, testified by deposition:
Q. Dr. Barrow, when you were talking about restrictions, are there any restrictions on Ms. Vicknair's walking?
A. Do you mean that I 
Q. Tell her she shouldn't be walking, that she should limit it, or there are certain aspects of walking she shouldn't do other than the repetitive deep stair climbing?
A. No, no.
Q. How about work; to your knowledge, was she ever working when you were treating her?
A. I can't remember and I don't remember if I commented on that in any of my notes.
....
A. I can tell you that I never wrote an order for her not to work. I never recall ever restricting her work or saying that she's not able to work at this time or anything of that nature.
Q. So, on the more positive side, there's no reason why this lady shouldn't be working, as far as you're concerned, as long as she's not on a bike and doing repetative (sic) deep stair climbing?
A. That's correct.
Q. So, although her medical condition may improve some over time, her functionability for gainful employment is not impaired, as far as you are concerned on the medical front, correct?
A. Well, I mean, I think that her ability to perform some activities is going to be limited by her knee pain. But, as far as specifically restricting her, no, I never did that.
Plaintiff did not prove she was in substantial pain that prevented her from being employed and earning 90% of her pre-injury wages. Barrow stated her knee pain was limiting, but not restrictive.
Plaintiff merely contends that her physical therapy in Covington three times a week will not allow her to work. She did not prove this same therapy could not be provided in Baton Rouge, which would have allowed her to be employed. After her accident, defendant and ILTC both allowed her to work a flexible schedule to accommodate her physical-therapy appointments. Furthermore, plaintiff did not begin physical therapy in Covington until January 1997, well over five months after she resigned from ILTC in August 1996. Therefore, plaintiff's problem of physical-therapy appointments prohibiting her from working did not occur until after she had voluntarily stopped working.
The trial court found, in pertinent part:
The issue is not before me whether or not she has the right to go to Covington to get treatment. The issue before me is whether her driving to Covington to get treatment and the length of time it takes for her to get her medical treatment is a barricade to her seeking employment or having continued in employment. And I am no[t] convinced that being in Covington for the treatment is absolutely necessary[;] therefore, I am certainly not willing to say that her having to drive there is going to do her out of a job, or that she needs to seek a job.
As a matter of fact, I have no way of knowing that the International Learning Center wouldn't have worked something out with her if she'd stayed with them to even allow her to do that. I do not have anything in the testimony from Mr. Shiffer to say that they would never have allowed that.
....

*480 But for her to choose to then take herself out of the job market to put her energies solely into her rehab without a physician saying stop work and do this, it's just not tenable.
The record shows that plaintiff chose to leave her job with defendant to work for ILTC (there was a $16,000.00 salary increase with the ILTC position); that she also chose to leave her subsequent position with ILTC; and that she selected the physical-therapy facility in Covington to provide her therapy and did not attempt to find a suitable therapist in Baton Rouge.[11] Therefore, plaintiff did not prove her injury rendered her incapable of earning 90% of her pre-injury wages. We find no manifest error in the trial court's findings.

CONCLUSION
For the foregoing reasons, we find the trial court did not err in finding plaintiff, Debra L. Bennett Vicknair, failed to prove by a preponderance of the evidence that she is entitled to supplemental earnings benefits and in denying her claim against defendant, The Nature Conservancy. We affirm the judgment of the trial court at plaintiff's costs.
AFFIRMED.
NOTES
[*] Lottinger, C.J., retired on July 15, 1998, and thus did not consider this rehearing.
[1] Plaintiff underwent arthroscopic surgery to reduce the chondromalacia under her kneecap. She also underwent physical therapy, which continued while she worked.
[2] Plaintiff had another surgery performed on her knee and continued physical therapy while with ILTC.
[3] Defendant's workers' compensation insurance company.
[4] Banks v. Indus. Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556.
[5] Id., 96-2840, pp. 7-8, 696 So.2d at 556.
[6] Id., 96-2840, p. 8, 696 So.2d at 556.
[7] Hurst v. Baker Sand Control, 94-2463, p. 4 (La.App. 1st Cir. 10/6/95), 671 So.2d 408, 411.
[8] Maurer v. Dillard Dept. Stores, 96-1608, pp. 3-4 (La.App. 1st Cir. 5/9/97), 693 So.2d 1290, 1292, writ denied, 97-1494 (La.9/19/97), 701 So.2d 175.
[9] Id., 96-1608, p. 4, 693 So.2d at 1292.
[10] Id.
[11] Plaintiff did get Barrow's approval after she went and visited the facility on her own.